UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

REGINALD STANLEY ROBERSON,   )   Case No. 1:12CV2623
   )
       Petitioner,   )   JUDGE SOLOMON OLIVER, JR.
   )
      v.   )   Magistrate Judge George J. Limbert
   )
CHRISTOPHER LAROSE, WARDEN[1],   )   **Report and Recommendation**
   )   **of Magistrate Judge**
       Respondent.   )
   )

On October 6, 2012[2], Petitioner Reginald Stanley Roberson ("Petitioner"), acting *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Lorain County, Ohio Court of Common Pleas, where he was convicted of two counts of rape in violation of Ohio Revised Code ("ORC") §2907.02(A)(2), felonies of the first degree, with two firearm specifications pursuant to ORC §§2941.141 and 2941.145 and a repeat violent offender specification pursuant to §2941.149; one count of aggravated robbery in violation of ORC §2911.01(A)(1), a felony of the first degree, with two firearm specifications and a repeat violent offender specification; one count of kidnapping in violation of ORC 2905.01(A)(2), a felony of the first degree, with two firearm specifications, a repeat violent offender specification, and a sexual intent specification pursuant to ORC §2941.147; one count of kidnapping in violation of ORC 2905.01(A)(4), a felony of the first degree, with two firearm specifications, a repeat violent offender specification, and a sexual intent

---

[1]Petitioner is now housed at Trumbull Correctional Institution, where Christopher LaRose is the warden.  See http://www.drc.ohio.gov/OffenderSearch/Search.  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Christopher LaRose as respondent.

[2]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was handed over to the prison mail system, not the date it was received and docketed by the federal habeas court. *Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

specification; one count of gross sexual imposition in violation of ORC §2907.05(A)(1), a felony of the fourth degree, with two firearm specifications; one count of carrying a concealed weapon in violation of ORC §2923.12(A)(2), a felony of the fourth degree; one count of improperly handling a firearm in a motor vehicle in violation of ORC §2923.16(B), a felony of the fourth degree, with two firearm specifications; one count of resisting arrest in violation of §2921.33(A), a misdemeanor of the second degree; and one count of having a weapon under disability in violation of ORC §2923.13(A)(2), a felony of the third degree, with two firearm specifications.  On March 26, 2013, with leave of Court, Respondent Ernie Moore, Warden of Lebanon Correctional Institution, where Petitioner was incarcerated at the time, filed an answer/return of writ. ECF Dkt. #6. No traverse was filed. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice:

## I.    **SYNOPSIS OF THE FACTS**

The Ninth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. *State v. Roberson*, 2011 WL 768755 (9th Dist.); ECF Dkt. #6-1.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} T.M. was working alone in a bar when a man wearing "grayish" sweatpants came in and sat down next to her. They were the only people in the bar as it was a slow night. She testified that the man asked to speak to the manager about having his band play at the bar. She told him that the manager was not around, and he left without having anything to drink. A short time later, the man came back into the bar and, after he sat down, T.M. noticed a gun in his right hand. He told her to open the cash register, and she did. She testified that he proceeded to carefully remove the money from the register, a little more than one hundred dollars, and put it in his pants pocket.

> {¶ 3} According to T.M., the man took her by the arm and led her to the front of the bar. He fired the gun close to her head to show her he was serious. He took her outside and put a "do-rag" over her head. She testified that the do-rag impeded her vision, but that she could still see. The man walked her to a white car, which was parked one street over from the bar, and forced her to get inside.

> {¶ 4} T.M. testified that the man then drove her around for a while and that it seemed like he was "[t]rying to trick [her]" by going in circles. She repeatedly saw the Lorain water tower and also recognized buildings as being part of a development within a few minutes of the bar. The man got her out of the car and took her into a house. She testified that he led her up a flight of stairs, through a kitchen and a living

area, and into a bedroom. T.M. saw a person sleeping on the couch in the living area with the television on. Derryl Moore, a friend of Mr. Roberson's, testified that he spent the night on the couch in Mr. Roberson's apartment, having fallen asleep watching television.

{¶ 5} Once they were inside the bedroom, the man told her to undress and then stripped her naked. T.M. testified that the room was dark and that she tried to avoid looking at the man. The man told her to lie down on the bed, and she complied. The man proceeded to touch her and forced her to perform fellatio on him. He then performed cunnilingus on her and attempted to begin vaginal intercourse but was unable to achieve an erection. The man then inserted his finger into her vagina before making her perform fellatio again.

{¶ 6} According to T.M., the man eventually told her to get her clothes on as he wanted to get her back to the bar before anyone knew she was gone. He put the do-rag back on her head and drove her around. Eventually, he had her get out and walk to the front of the car. He removed the do-rag, telling her to count to sixty before leaving. She testified that she counted to three hundred before looking around. She recognized that she was beside a church near the bar and ran back to the bar.

{¶ 7} When T.M. entered the bar, police were inside. They took her to be examined by a sexual assault nurse examiner. As they drove away from the bar, she observed a white car stopped by police in the street. She testified that she recognized the car as being the one used in her abduction and remarked on that fact to the officer driving her.

{¶ 8} Abraham Reynolds, the manager of the bar, testified that he had received a phone call from customers, who told him that T.M. was not there. He hurried down to the bar and looked at the surveillance tape. The tape showed the robbery and the abduction, leading Mr. Reynolds to call the police. When police arrived, he showed them the tape.

{¶ 9} Officer Manuel Brillon was one of the first officers to arrive on the scene. He viewed the surveillance tape and, after additional officers had arrived at the bar, decided to drive around the area to look for anything suspicious.

{¶ 10} While canvassing the neighborhood, which he had patrolled for thirty years, Officer Brillon observed a white car sitting in a church parking lot with its lights on. Officer Brillon did a U-turn to investigate. As he approached the parking lot, he observed the white car pulling out and saw that the driver was a black male.

{¶ 11} Officer Brillon stopped the car and, following procedure, reported the stop to the dispatcher. When he approached the driver's window, the driver asked why he had stopped him. Officer Brillon responded that there had been an abduction and he was checking the area. He asked the driver for his license from which he identified him as Mr. Roberson.

{¶ 12} Officer Jacob Morris arrived at the traffic stop to back up Officer Brillon and took up a position at the right-rear bumper of the car. He testified that it was regular procedure to have two officers at a stop at that time of night for safety.

{¶ 13} Officer Brillon testified that, because his portable radio had been giving him trouble, he decided to use the radio in his patrol car to run Mr. Roberson's license. According to Officer Morris, after Officer Brillon walked away from the car, Mr. Roberson looked over his shoulder towards Officer Brillon and produced a metallic

object from the right side of the seat. Officer Morris believed this to be a gun and signaled to Officer Brillon. Officer Morris testified that he saw Mr. Roberson place the object beneath the driver's seat.

{¶ 14} Officer Morris and Officer Miguel Salgado, who had arrived at the scene, walked to the driver's side door of the car, and Officer Morris asked Mr. Roberson to step out. According to Officer Morris, Mr. Roberson refused, asking what he had done. Officer Morris repeated the order, and Mr. Roberson responded that he had to go to the bathroom. Officer Morris repeated his order a third time, and Mr. Roberson did not respond. Officer Morris decided that Mr. Roberson was unlikely to comply with the order and might even try to run, so he opened the door and grabbed Mr. Roberson's arm. Mr. Roberson then exited the car, and the two officers escorted him to its rear. Officer Morris testified that he saw a red do-rag in Mr. Roberson's hand as he exited the car.

{¶ 15} Officer Brillon testified that, as Officers Morris and Salgado led Mr. Roberson to the back of the car, he observed a do-rag in Mr. Roberson's hand. According to Officer Brillon, a call came in from the officers still at the bar asking if the officers had observed a do-rag in the vehicle or Mr. Roberson's possession. Officer Brillon testified that, after Mr. Roberson's arrest, he made sure to place the do-rag in an evidence bag.

{¶ 16} After Officer Salgado frisked Mr. Roberson for weapons, Officer Morris returned to the front of the car and looked under the driver's seat. He observed a gun and had Mr. Roberson arrested for carrying a concealed weapon. Officer Salgado searched Mr. Roberson and discovered one hundred and sixty dollars in Mr. Roberson's pocket. The money "appeared to be shoved in."

{¶ 17} According to Officer Morris, he attempted to place Mr. Roberson in the back of his cruiser, but Mr. Roberson resisted and "spun around." Officer Morris stated that he took Mr. Roberson to the ground in case he was trying to escape. With Officer Salgado's assistance, Officer Morris put Mr. Roberson in the back of the cruiser and took him to the county jail.

{¶ 18} The day after the incident, Detective Edward Bermudez brought a photo array to T.M.'s home and asked if she recognized any of the men as being the one who abducted her. Detective Bermudez testified that she seemed timid and uncomfortable, but that she carefully looked over the photo array before selecting a picture. She did not select Mr. Roberson's picture.

{¶ 19} Michael Roberts of the Bureau of Criminal Identification and Investigation testified that he test-fired the revolver recovered from Mr. Roberson's car in accordance with Bureau protocols. Based on his experience and training, he determined that a spent casing found inside the revolver had been fired by that gun. He also testified that, even if the bullet fired in the bar had been found, it would have been unlikely that he would have been able to match it to the gun. According to Mr. Roberts, the bullet was such a small caliber that, upon hitting an object, it would have likely disfigured, rendering it useless for ballistics comparison.

{¶ 20} Martin Lewis, a forensic scientist in the trace evidence section of the Bureau, testified that he examined the gunshot residue kits collected from Mr. Roberson and found evidence of gunshot primer on the sample from his right hand. The sample from Mr. Roberson's left hand was negative.

-4-

{¶ 21} Stacy Violi, a forensic scientist with the Bureau, testified that she tested the do-rag obtained from Mr. Roberson during the search of his car for DNA. The results of the tests indicated that there was DNA from three individuals on the do-rag. She testified that her tests revealed that Mr. Roberson and T.M., along with an unknown third individual, were the sources of the DNA on the do-rag.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

In the January and October terms of 2008, the Lorain County, Ohio Grand Jury, by way of indictment on January 31, 2008 and supplemental indictment on October 30, 2008, charged Petitioner with two counts of rape in violation of Ohio Revised Code ("ORC") §2907.02(A)(2), felonies of the first degree (Counts One and Two), with two firearm specifications and a repeat violent offender specification; two counts of aggravated robbery in violation of ORC §2911.01(A)(1)(Counts Three and Fourteen), felonies of the first degree, with two firearm specifications and a repeat violent offender specification; two counts of aggravated robbery in violation of ORC §2911.01(A)(3), felonies of the first degree (Counts Four and Fifteen), with two firearm specifications and a repeat violent offender specification; two counts of kidnapping in violation of ORC 2905.01(A)(2)(Counts Five and Twelve), felonies of the first degree, with two firearm specifications, a repeat violent offender specification and a sexual motivation specification; two counts of kidnapping in violation of ORC 2905.01(A)(4)(Counts Six and Thirteen), felonies of the first degree, with two firearm specifications, a repeat violent offender specification and a sexual motivation specification; one count of gross sexual imposition in violation of ORC §2907.05(A)(1)(Count Eight), a felony of the fourth degree, with two firearm specifications; one count of carrying a concealed weapon in violation of ORC §2923.12(A)(2)(Count Nine), a felony of the fourth degree, one count of improperly handling a firearm in a motor vehicle in violation of ORC §2923.16(B)(Count Ten), a felony of the fourth degree, with two firearm specifications; one count of resisting arrest in violation of §2921.33(A)(Count Eleven), a misdemeanor of the second degree; and one count of having a weapon under disability in violation of ORC §2923.13(A)(2)(Count Seven), a felony of the third degree, with two firearm specifications.  ECF Dkt. #6-2.

According to the "Amended, Amended Judgment Entry of Conviction and Sentence[3]," dated December 15, 2009, the state dismissed Counts Three through Six prior to trial, and the Court granted a judgment of acquittal on the aggravated robbery charge in Count Fifteen. ECF Dkt. #6-7. On February 6, 2009, the jury convicted Petitioner on all of the remaining counts (which apparently were renumbered as Counts One through Nine), and the corresponding specifications, with the exception of weapon under disability charge, which was tried to the Court. That same day, the Court found Petitioner guilty of  having a weapon under disability and the corresponding firearms specifications.  ECF Dkt. #6-4.

On December 15, 2009, the Court imposed a ten-year sentence for each of the rape convictions, to be served concurrently, but consecutively to the sentences on the other convictions; a two-year sentence for the weapon under disability conviction,  a twelve-month sentence for each of the gross sexual imposition conviction, the carrying a concealed weapon conviction, and the firearm in the motor vehicle conviction, and a sixty-day sentence for the resisting arrest conviction, all to be served concurrently, but consecutively to the sentences on the other convictions; and a ten-year sentence for each of the kidnapping convictions, to be served concurrently, but consecutively to the sentences on the other convictions; and a ten-year sentence on the aggravated robbery conviction, to be served consecutively to all of the sentences on the other convictions.  Additional concurrent terms of one and three years were imposed on each of the firearms specifications, which were consecutive to the sentences imposed on the convictions for an additional three-year sentence. Additional two-year terms were imposed on the repeat violent offender specifications for each of the rape convictions, to be served concurrently,  and each of the kidnapping convictions, to be served concurrently, and aggravated robbery conviction, for a total of six years, to be served

---

[3]Three judgment entries of conviction and sentence, the original, an amended judgment entry, and an "amended amended" judgment entry, were issued on February 24, 2009, ECF Dkt. #6-5, August 13, 2009, ECF Dkt. #6-6, and December 15, 2009, respectively.  ECF Dkt. #6-7.

consecutively to the sentences on the convictions and the firearm specifications.  The Court ultimately imposed an aggregate sentence of forty-one years.[4]

### B.    Direct Appeal

On January 4, 2010, Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals for the Ninth District. ECF Dkt. #6-19. Petitioner raised the following assignments of error in his appellate brief:

> THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM AN UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE CONSTITUTION OF THE STATE OF OHIO.

> THE VERDICTS IN THIS CASE ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE, AND SHOULD BE REVERSED BECAUSE THEY VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

ECF Dkt. #6-20.  On March 9, 2011, the Court of Appeals issued a decision and journal entry overruling each assignment of error and affirming the judgment of the trial court.  ECF Dkt. #6-22.

### C.    Supreme Court of Ohio

On April 21, 2011, Petitioner, through new counsel, filed a timely notice of appeal to the Ohio Supreme Court where he presented the following proposition of law:

> "EVEN WHERE THERE IS REASON TO BELIEVE A CRIME VICTIM IS IN DANGER, POLICE MAY NOT DETAIN AN INDIVIDUAL FOR INVESTIGATION UNLESS THERE IS REASONABLE SUSPICION TO BELIEVE THAT THE PERSON BEING DETAINED HAS ENGAGED OR IS ENGAGING IN CRIMINAL ACTIVITY."

ECF Dkt. #6-25. On June 22, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #6-27.

---

[4]Ten years for the rape convictions, plus ten years for the kidnaping convictions, plus ten years for the aggravated robbery conviction, plus two years for the remaining substantive charges, plus three years for the firearm specifications, plus six years for the repeat offender specifications equals forty-one years.

-7-

### D. United States Supreme Court

On November 21, 2011, Petitioner, through new counsel, and with leave of court, filed a petition for a writ of certiorari in the United States Supreme Court, asserting a Fourth Amendment challenge to the investigative stop and detention that occurred in this case. ECF Dkt. #6-29. On January 23, 2012, the Supreme Court denied the petition. *Roberson v. Ohio*, __ U.S. __, 132 S.Ct. 1150 (2012).

## III. 28 U.S.C. § 2254 PETITION

On October 6, 2012, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE: "ILLEGAL SEARCH AND SEIZURE."

SUPPORTING FACTS: "COURT SHOULD HAVE GRANTED MOTION TO SUPPRESS ITEMS SEIZED DURING WARRANT-LESS SEARCH AND ILLEGAL SEIZURE OF REGINALD ROBERSON. SEARCH CONDUCTED WITHOUT PROBABLE CAUSE, NO JUSTIFIED REASON FOR PRO-LONGED DETAINMENT. I WAS STOPPED AND DETAINED BECAUSE I WAS BLACK."

GROUND TWO: "SUFFICIENCY OF THE EVIDENCE."

SUPPORTING FACTS: "CONVICTION WAS NOT BASED ON SUFFICIENCY OF EVIDENCE. REVIEW OF THE TRIAL TRANSCRIPT REVEALS NO FACTUAL EVIDENCE. INCLUDING THE ALLEGED SMOKING GUN, THE PROSECUTOR AND THE VICTIM ALLEGED AS A BLACK DO RAG WITH D.N.A., THEN ALLEGED MAYBE IT WAS RED. ALL ESSENTIAL ELEMENTS OF CHARGES, NOT PROVEN."

GROUND THREE: "INEFFECTIVE ASSISTANCE OF [TRIAL] COUNSEL."

SUPPORTING FACTS: "COUNSEL FAILED TO CONTACT REQUESTED WITNESSES FOR DEFENSE. COUNSEL DID NOT PROVIDE THE REPORT OR SPECIAL INVESTIGATOR THAT THE DEFENDANT REQUESTED, AND WAS GRANTED $15,000 BY THE COURTS."

ECF Dkt. #1.

## IV. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6ᵗʰ Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. §2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6ᵗʰ Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6ᵗʰ Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6ᵗʰ Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional

law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

###    C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not

-10-

required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

> (1)  whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)  whether the state courts actually enforced the state procedural sanction;
>
> (3)  whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)  if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where

-11-

state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (*i.e.*, exhausted) or because they were not properly presented to the state courts (*i.e.*, were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.     STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 on October 6, 2012, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

-12-

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A. Decisions of lower federal courts may not be considered.
>
> B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C. The state court decision may be overturned only if:

1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.     'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced

-14-

because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.    **ANALYSIS**

### A.    **Ground One**

GROUND ONE: "ILLEGAL SEARCH AND SEIZURE."

SUPPORTING FACTS: "COURT SHOULD HAVE GRANTED MOTION TO SUPPRESS ITEMS SEIZED DURING WARRANT-LESS SEARCH AND ILLEGAL SEIZURE OF REGINALD ROBERSON. SEARCH CONDUCTED WITHOUT PROBABLE CAUSE, NO JUSTIFIED REASON FOR PRO-LONGED DETAINMENT. I WAS STOPPED AND DETAINED BECAUSE I WAS BLACK."

Respondent cites *Stone v. Powell*, 428 U.S. 465, 494 (1976) and  *Riley v.Gray*, 674 F.3d 522 (6th Cir.1982) for the proposition that Petitioner's first ground for relief is not cognizable on habeas corpus review.  Respondent asserts that only limited instances exist in which a convicted defendant may raise Fourth Amendment violation allegations in a collateral proceeding, and the instant proceeding does not involve any of those limited instances.

In *Stone,* the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.

The Sixth Circuit Court of Appeals employs a two-step inquiry in order to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court: "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted); *Riley*, 674 F.2d at 527. The Sixth Circuit has held that "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate." *Id.* at 526.

Petitioner has not demonstrated that a failure of that mechanism has occurred in this case. He filed a motion to suppress in the trial court and the trial court held a hearing on the motion and overruled his motion. Petitioner appealed the trial court's denial of his motion to suppress to the Ohio appellate court, and sought further review in the Supreme Court of Ohio and the United States Supreme Court. Both the trial court and the appellate court considered his Fourth Amendment arguments and concluded that no Fourth Amendment violation existed. Accordingly, the undersigned recommends that the Court find that Petitioner was afforded an adequate opportunity to present his Fourth Amendment claims, the lower courts considered those claims, and those opportunities were in no way frustrated by a failure of the mechanism in which to present those claims, and to conclude that Ground One has no merit.

**B.** **Ground Two**

GROUND TWO: "SUFFICIENCY OF THE EVIDENCE."

SUPPORTING FACTS: "CONVICTION WAS NOT BASED ON SUFFICIENCY OF EVIDENCE. REVIEW OF THE TRIAL TRANSCRIPT REVEALS NO FACTUAL EVIDENCE. INCLUDING THE ALLEGED SMOKING GUN, THE PROSECUTOR AND THE VICTIM ALLEGED AS A BLACK DO RAG WITH D.N.A., THEN ALLEGED MAYBE IT WAS RED. ALL ESSENTIAL ELEMENTS OF CHARGES, NOT PROVEN."

Although Petitioner raised a sufficiency of the evidence challenge in his direct appeal before the Ninth District, he did not present the claim to the Supreme Court of Ohio. In Ohio, the failure to present a claim to either a Court of Appeals or to the Ohio Supreme Court constitutes a waiver of the claim. *State v. Broom*, 40 Ohio St.3d 277, 288-289, 533 N.E.2d 682 (1988); *State v. Moreland*,

-16-

50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). The failure of a state inmate to appeal a claim to the Supreme Court of Ohio constitutes a procedural default on habeas review. See *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D.Ohio 2002). To overcome this bar on habeas review, a petitioner must present cause for the default and actual prejudice. *Murray v. Carrier*, 477 U.S. 478 (1986); *Fornash v. Marshall*, 686 F.2d 1179 (6th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983). In the alternative, Petitioner may show that failure to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). Petitioner has offered no explanation for his failure to raise the sufficiency of the evidence challenge before the Ohio Supreme Court, nor had he demonstrated that he will suffer a fundamental miscarriage of justice. As a consequence, the undersigned recommends that the Court find that Ground Two is procedurally barred.

Even assuming that Ground Two is not procedurally barred, Ground Two has no merit. An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). On federal habeas corpus review, the District Court cannot weigh the credibility of the witnesses. *Walker v. Engle*, 703 F.2d 959, 969. Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), *and Walker,* 703 F.2d at 969.

In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. The inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

-17-

Moreover, in determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*. *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010). If sufficient evidence exists with which to convict, the inquiry ends. *Id.* If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.

The Ninth District provided the following analysis of Petitioner's sufficiency of the evidence claim:

> {¶ 41} In his second assignment of error, Mr. Roberson has argued that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Sufficiency of the evidence claims are reviewed *de novo*. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, at ¶ 33. Viewing the evidence in the light most favorable to the prosecution, this Court must determine whether the evidence could have convinced the average finder of fact beyond a reasonable doubt of Mr. Roberson's guilt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

> {¶ 42} A jury convicted Mr. Roberson of violating Sections 2907.02(A)(2) and 2907.05(A)(1) of the Ohio Revised Code by committing rape and gross sexual imposition. Section 2907.02(A)(2) of the Ohio Revised Code provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Section 2907.05(A)(1) provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when ... [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."

> {¶ 43} T.M. testified that her abductor forced her to strip naked and perform fellatio on him, performed cunnilingus on her, and inserted his finger into her vagina. Mr. Roberson was found in possession of a do-rag that had DNA on it consistent with T.M.'s, and his apartment fit T.M.'s description of the apartment where the assault took place. Viewing the evidence in a light most favorable to the State, it was sufficient to prove beyond a reasonable doubt that Mr. Roberson forced T.M. to submit to the sexual conduct and contact. His convictions for gross sexual imposition and both counts of rape are supported by sufficient evidence.

> {¶ 44} The jury also convicted Mr. Roberson of violating Section 2911.01(A)(1) of the Ohio Revised Code by committing aggravated robbery. Section 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense, as defined in

-18-

section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall ... [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 45} T.M. testified that the man who abducted her also brandished a gun at her and took the money from the cash register. The surveillance video shows those events. According to T.M., the robber shot the gun to show her he meant business. The video tape recorded the sound of a gunshot. The gun found in Mr. Roberson's car had one spent cartridge in it, and gunshot residue tests of the gun and Mr. Roberson's right hand came back positive. Finally, Mr. Roberson was found to have one hundred and sixty dollars "shoved in" his pocket when he was arrested. Viewing the evidence in the light most favorable to the State, it was sufficient to prove that Mr. Roberson committed aggravated robbery.

{¶ 46} The jury convicted Mr. Roberson of violating Sections 2905.01(A)(2) and (4) of the Ohio Revised Code. Section 2905.01(A)(2) provides that "[n]o person, by force, threat, or deception ... shall remove another from the place where the other person is found or restrain the liberty of the other person ... [t]o facilitate the commission of any felony or flight thereafter." Section 2905.01(A)(4) provides that "[n]o person, by force, threat, or deception ... shall remove another from the place where the other person is found or restrain the liberty of the other person ... [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶ 47} T.M testified that a man came into the bar, forced her to give over the contents of the cash register at gun point, and then forced her to go outside and get into his car. The surveillance video supported T.M.'s testimony. As mentioned above, T .M. testified that her abductor raped her. Further, Mr. Roberson was arrested in the area of the bar after T.M.'s abductor released her with money consistent with the amount stolen from the bar, a gun, and a do-rag containing DNA consistent with T.M.'s. Viewing the evidence in the light most favorable to the State, Mr. Roberson's convictions for kidnapping are supported by sufficient evidence.

{¶ 48} The jury also convicted Mr. Roberson of violating Sections 2923.16(B) and 2923.12(A)(2) of the Ohio Revised Code by improperly handling a firearm in a motor vehicle and by carrying a concealed weapon. Section 2923.12(A)(2) provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand ... [a] handgun...." Section 2923.16(B) provides that "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Officer Morris testified that he found a revolver under the driver's seat of Mr. Roberson's car. Testing done at the Bureau of Crime Identification and Investigation proved the gun to be operable. Viewing the evidence in the light most favorable to the State, Mr. Roberson's convictions for carrying a concealed weapon and improperly handling a firearm in a motor vehicle are supported by sufficient evidence.

{¶ 49} The jury convicted Mr. Roberson of violating Section 2921.33(A) of the Ohio Revised Code by resisting arrest. Section 2921.33(A) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Officer Morris testified that Mr. Roberson resisted entering the police cruiser and that he spun around when Officer Morris continued to try to place him in the back seat. Viewing the evidence in the light most favorable to the State, Mr. Roberson's conviction for resisting arrest is supported by sufficient evidence.

-19-

{¶ 50} The jury also convicted Mr. Roberson of two gun specifications for each count of rape and kidnapping, as well as for gross sexual imposition, improperly handling firearms in a motor vehicle, and aggravated robbery. The jury also convicted him of a sexual motivation specification on both counts of kidnapping. The trial court convicted Mr. Roberson of having weapons while under disability. As mentioned above, the testing at the Bureau proved the gun to be operable. The video corroborated T.M.'s testimony that the robber had a gun and shot it. Mr. Roberson's convictions for having a gun under disability and the gun specifications are not against the manifest weight of the evidence.

Having considered the Ninth District's analysis, the undersigned recommends that the Court find that sufficient evidence was adduced at trial to convict Petitioner of all of the charges at issue. As a consequence, the Ninth District's decision was neither contrary to, or nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Likewise, the Ninth District's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the undersigned recommends that the Court find that Ground Two is procedurally barred, or, in the alternative, has no merit.

### C.    Ground Three

GROUND THREE: "INEFFECTIVE ASSISTANCE OF COUNSEL."

SUPPORTING FACTS: "COUNSEL FAILED TO CONTACT REQUESTED WITNESSES FOR DEFENSE. COUNSEL DID NOT PROVIDE THE REPORT OR SPECIAL INVESTIGATOR THAT THE DEFENDANT REQUESTED, AND WAS GRANTED $15,000 BY THE COURTS."

Despite the fact that Petitioner had new counsel during his appeal before the Ninth District, he nonetheless failed to challenge the effective assistance of his trial counsel.  As previously stated, federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *Lundgren*, *supra*. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir.2006) (quoting *Murray, supra* at 488).

Petitioner contends that he did not assert an ineffective assistance of counsel claim on direct appeal because he "did not receive any trial transcripts or records that would have supported [his]

claim until after the appeal had been filed." ECF Dkt. #1 at p. 8. Petitioner continues, "I made several requests from clerk of courts [sic], trial lawyer Joseph Grunda and appeal lawyer Paul Griffin to furnish me with the documentation during my appeal process and was denied." ECF Dkt. #1 at p. 8. However, the allegations underlying Petitioner's ineffective assistance claim do not require the trial transcript for substantiation. He contends that his trial counsel failed to call relevant witnesses at trial and failed to submit an investigator's report, which would have been known to Petitioner without the trial transcripts. Furthermore, Petitioner enjoyed the benefit of new counsel at each level of his direct appeal, but neither his counsel before the Ninth District Court of Appeals nor his counsel before the Ohio Supreme Court (both of whom had access to the case file and trial transcript) asserted the ineffective assistance of counsel claim. Accordingly, the undersigned recommends that the Court find that Petitioner has failed to articulate cause for his procedural default. Finally, petitioner has failed to demonstrate that a fundamental miscarriage of justice would result from the refusal by the Court to consider his ineffective assistance of counsel claim. Accordingly, this Court should find that Ground Three is procedurally barred.

VII.    <u>CONCLUSION</u>

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: March 5, 2013                          */s/ George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).